**AIR ET CHALEUR, S.A., Pierre Berger, Daniel Cauchie, Jacques W. Van De Velde, Plaintiffs-Appellees,**

v.

**Eliot JANEWAY, Defendant-Appellant.**

**No. 185, Docket 84–7409.**

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1984.

Decided March 8, 1985.

Max Gitter, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for defendant-appellant.

Richard M. Meyer, New York City (Jeremy Heisler, Milberg, Weiss, Bershad, Spec-

**491**

thrie & Lerach, New York City, of counsel), for plaintiffs-appellees.

Before FEINBERG, Chief Judge, and LUMBARD and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York after a five day jury trial before Owen, J. After the jury found for plaintiffs on the issue of defendant's liability for breach of contract, the court directed a verdict for plaintiffs on damages, and awarded them $382,000. For the reasons stated below, we affirm the judgment of the district court.

BACKGROUND

Plaintiffs in this diversity action are Air et Chaleur, a Belgian corporation, and Pierre Berger, Daniel Cauchie and Jacques Van de Velde, European businessmen. Defendant Eliot Janeway, a nationally known financier and economic consultant, owned stock in Medserco, Inc., a Minnesota corporation headquartered in St. Louis, Missouri, which provided health insurance for preventive medicine and ran outpatient clinics for minor surgical procedures. He also served as Medserco's economic advisor.

In August 1978, the individual plaintiffs went to St. Louis to investigate Medserco to determine whether they wished to make an investment in, or engage in joint ventures with, that company. The following month, Janeway and a number of Medserco officials went to Paris for a meeting with the plaintiffs. Here the plaintiffs first encountered Janeway. After a long morning session, the parties retired to a restaurant to continue their discussions.

During the course of the luncheon, Janeway stated that, if plaintiffs purchased 66,-000 shares of Medserco stock at $4.50 per share, he would buy the stock from them at $6.00 per share. Plaintiffs subsequently purchased the stock at that price. The stock was restricted and legended, the restrictions to terminate in October 1980.

In May 1979, in response to a request from Van de Velde for a written verification of his oral commitment, Janeway sent a letter to Van de Velde, the text of which is set out in the margin.[1] Both Van de Velde and Janeway used October 1981 as the repurchase date, but Van de Velde later claimed that his use of that date was a mistake. In a letter dated July 20, 1979, Richard Ross, president of Medserco, indicated to Van de Velde that he believed that the arrangement was for two rather than three years. He also said, "I should like to suggest that you still seem to have the problem of consideration to make the agreement binding. It would seem only fair that if Mr. Janeway is giving you a put, he should also have a call of some sort." In November 1979, Janeway wrote to plaintiff Cauchie:

Dear Mr. Cauchie:

I am advised that your failure to be responsive to the request made of you to furnish consideration in compensation for the Put I offered you voids my offer.

This is to notify you that we have no arrangement.

Yours sincerely,<br>
/s/Eliot Janeway

The value of Medserco stock, which had been approximately $5 per share in September 1978, had slipped to $4 in October 1980 and then plummeted to 20 cents per share by November 1981. On October 28, 1981, plaintiffs tendered their stock to Janeway, as directed in his letter of May 14, 1979. Janeway refused to accept the tender and pay the purchase price. Medserco filed for bankruptcy in November 1981, one week after plaintiffs filed this suit.

In a trial before Judge Owen and a jury, plaintiffs contended that Janeway had made an oral promise to purchase their stock at $6 per share upon tender of the shares to him. Janeway argued that his statement was intended to be a put which would be effective only if plaintiffs gave him the corresponding call.[2] Therefore, he asserted that because no call was ever given, his offer never became binding. Janeway also argued that the plaintiffs had decided to buy Medserco stock before the Paris meeting occurred, so that the contract was unsupported by consideration.

The court first charged the jury on liability, stating that it would charge separately on damages if necessary. After the jury returned a verdict for all plaintiffs on the liability issue, the court determined that there were no factual issues concerning damages for jury determination. The court held that plaintiffs had a duty to mitigate damages by securing a replacement put after Janeway's breach. However, the court also ruled that the burden was on defendant to prove the scope of the possible mitigation and that defendant had failed to introduce evidence sufficient to carry this burden. Defendant's counsel requested that the court reopen proof to allow for the introduction of evidence on damages, but the court refused. Instead, the court directed a verdict for plaintiffs in the amount of $382,000, which represented the cost of 66,000 shares at $6 per share, minus 20 cents per share, the low bid price for the day of tender.

DISCUSSION

Janeway's first argument on appeal is that there was no evidence from which the trier of fact could find a three year put exercisable in October 1981. He contends that the contract was at most for two years. The origin of this finding below is

---

1.                                          May 14, 1979

Dear Mr. Van de Velde:
This will confirm my willingness to implement my oral undertaking, given in Paris last autumn, to repurchase the 66,000 shares of MEDSERCO you and your associates hold at $6.00 a share net in October 1981.
It is understood that this undertaking applies only with respect to all or any of this stock tendered to me at my office at the above address during the month of October 1981.

Yours sincerely,<br>
/s/ Eliot Janeway<br>
Eliot Janeway

2. "A put is an option to sell at a certain price within a certain period and a call is a similar option to buy." 1 L. Loss, *Securities Regulation* 467 (2d ed. 1961).

less than crystal clear from the record. The precise question of the duration of the contract was not submitted to the jury. The jury was asked only to determine whether the contract as the court described it existed. Janeway's sole contention below was that there was no contract; defense counsel neither addressed the issue of duration nor requested submission of the question to the jury.

■ Insofar as the argument that the put was for two years raises a new issue not considered below, we are barred from considering it here. *Schmidt v. Polish People's Republic*, 742 F.2d 67, 70 (2d Cir. 1984). Although this barrier to appellate consideration of new issues is not absolute, only the threat of "manifest injustice" would persuade us to ignore it. *Id.; cf. Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54–55 (2d Cir.1978). Janeway was represented below by competent counsel who took a calculated risk in not presenting an alternative interpretation of his client's case. The failure of this choice does not constitute manifest injustice. *See Schmidt*, 742 F.2d at 70 ("strategically motivated attack" not sufficient to be considered manifest injustice).

■ Even if we were to find that the question of the contract's duration had been adequately preserved for appeal, we would still decline to reverse the district court's decision. The October 1981 date was mentioned in two letters: the April 25, 1979 letter from Jacques Van de Velde to Janeway and the May 14, 1979 letter from Janeway to Van de Velde. Although both Van de Velde and Richard Ross, Medserco's president, testified that they believed that the use of 1981 as the tender date was erroneous, Janeway chose not to contest the terms of the contract. Because Janeway made this strategic choice, and thus did not dispute his own letter, it was not unreasonable for the trier of fact to consider Janeway's letter in defining the scope of the contract. Our role in reviewing such a determination is limited.

We may not weigh conflicting evidence, judge the credibility of witnesses, or substitute our judgment for that of the jury. Rather, we are bound to view the evidence, including all reasonable inferences to be drawn therefrom, in the light most favorable to the prevailing party, even though contrary inferences might reasonably be drawn.

*Unijax, Inc. v. Champion International, Inc.*, 683 F.2d 678, 684 (2d Cir.1982). Viewed in this light, the record supports the jury's verdict. We cannot say that the jury's findings reflect "sheer surmise and conjecture." *Armstrong v. Commerce Tankers Corp.*, 423 F.2d 957, 960 (2d Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970).

More significantly, the district court's charge to the jury on the issue of liability included no less than three references to October 1981 as the tender date. *See, e.g.,* J.App. at 705 ("for the plaintiff to prevail you must find that there was a contract to permit a repurchase upon tender, to require a repurchase upon tender *in October of 1981* that bound Mr. Janeway, and that he dishonored it." (emphasis added)); J.App. at 723. This charge resulted in a verdict for all plaintiffs against Janeway, based on the jury's finding that the contract described by the judge existed. Although the jury charge was interrupted by a lengthy colloquy between the attorneys and Judge Owen, Janeway's counsel never took advantage of the numerous opportunities to object to the use of the three year date in the charge.

■ To the extent that the decision as to the duration of the contract was based on Judge Owen's use of October 1981 as the tender date in his charge to the jury, defendant's argument may be read as an assignment of error in the charge. Ordinarily, however, an error in a jury charge will not be considered on appeal unless a timely objection was made at trial, stating the nature of, and the grounds for, the objection. Fed.R.Civ.P. 51; *Haskell v. Kaman Corp.*, 743 F.2d 113, 123 (2d Cir.1984); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir.1981); *Williams v. City of New York*, 508 F.2d 356, 362 (2d Cir.1974). *See*

*also Steinhauser v. Hertz Corp.*, 421 F.2d 1169, 1172 (2d Cir.1970) (noting that counsel had made objections quite clear in colloquy, we found that position was adequately presented). No such objection was made here.

■ We may review a jury charge for error absent timely objection by the harmed party only where the error is " 'plain and may result in a miscarriage of justice,' " *Williams*, 508 F.2d at 362 (quoting *McNamara v. Dionne*, 298 F.2d 352, 355 (2d Cir.1962)), or in "obvious instances of … misapplied law." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 256, 101 S.Ct. 2748, 2754, 69 L.Ed.2d 616 (1981). This situation fits neither category. The district court's adoption of the date of tender, even if it represents an erroneous factual conclusion, clearly is not "misapplied law." Similarly, and we repeat, the failure of an element of trial strategy by Janeway's counsel does not impress us as an "obvious instance[ ] of injustice." *Id.; cf. Beardshall v. Minuteman Press International*, 664 F.2d 23, 27 (3d Cir.1981) (trial court's erroneous statement of applicable burden of proof was reversible because "error related to a critical issue"). Had Janeway's counsel chosen to view the duration of the contract as a critical issue, he could have presented a defense on that matter. The fact that he chose instead to rest his case on the basic issue of whether or not a contract existed reflects a responsible choice of trial strategy. We find no injustice here. Therefore, we hold that the finding that the contract was for three years, if erroneous at all, fails to mandate reversal in light of the absence of objection below.

Janeway next argues that the trial court erred in directing a verdict on damages. He asserts, first, that plaintiffs were obligated to mitigate damages, and second, that the trial court erred in failing to allow him to reopen the proof to allow for evidence on the question of replacement puts. We agree with the first contention but disagree with the second.

■ New York's courts [3] adhere to the universally accepted principle that a harmed plaintiff must mitigate damages. *Wilmot v. State*, 32 N.Y.2d 164, 168–69, 344 N.Y.S.2d 350, 352–53, 297 N.E.2d 90, 92–93 (1973); *Cornell v. T.V. Development Corp.*, 17 N.Y.2d 69, 74, 268 N.Y.S.2d 29, 33, 215 N.E.2d 349, 351–52 (1966). *See also Katz Communications v. Evening News Association*, 705 F.2d 20, 26 (2d Cir.1983) (applying New York law); *Courtland v. Walston & Co.*, 340 F.Supp. 1076, 1079–80 (S.D.N.Y.1972) (applying New York mitigation doctrine to sale of securities). The district court properly applied New York's mitigation doctrine in this trial. When plaintiffs learned in 1979 that Janeway intended to breach the contract, they were not at liberty to hold their stocks until the agreed tender date of October 1981. They were obligated to take whatever reasonable actions they could to minimize their damages. *Courtland*, 340 F.Supp. at 1080; *Wilmot*, 32 N.Y.2d at 168–69, 344 N.Y.S.2d at 353, 297 N.E.2d at 92.

■ However, the district court was also correct in holding that defendant bore the burden of introducing evidence to prove that plaintiffs could have lessened their damages. *Katz Communications*, 705 F.2d at 26 ("the burden is on the appellants to prove any potential item in mitigation of damages inasmuch as it is *pro tanto* a defense to the claim of the wronged party"); *Jenkins v. Etlinger*, 55 N.Y.2d 35, 39, 447 N.Y.S.2d 696, 698, 432 N.E.2d 589, 591 (1982); *Cornell*, 17 N.Y.2d at 74, 268 N.Y. S.2d at 33, 215 N.E.2d at 351–52. Defendant failed to carry this burden.

Defendant's only evidence on the question of mitigation was an exhibit listing daily quotations on Medserco stock from the National Daily Quotation Service, including high and low "Bid" prices and high

---

**3.** Although there was some discussion as to the proper governing law in this international dispute, the parties and the court apparently agreed that New York law would control. Because we find no reason to reject their interpretation, we will use New York law where appropriate. *See Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir.1984).

and low "Asked" prices for each month of 1980 and 1981. Defense counsel, in a colloquy with opposing counsel and Judge Owen, maintained that this exhibit was sufficient to prove that plaintiffs could have sold their stock at the listed prices after the restrictions were removed in October 1980. The defense argued that this evidence, combined with proof of plaintiffs' knowledge of the over-the-counter market, was adequate to establish the possibility and the amount of mitigation. J.App. at 741.

Judge Owen found this evidence inadequate as a matter of law:

> The record has nothing in it whatsoever as to whether they thought about getting [another put], whether they could have, what it would have cost them, it may not be obtainable. Since the burden is on the defendant to prove the opportunity to mitigate and mitigation, it seems to me there is a failure of proof.

J.App. at 745. He therefore directed a verdict for plaintiffs on the issue of damages.

Janeway claims that the district judge abused his discretion in denying the motion to reopen for further evidence in mitigation of damages. He asserts that the replacement put theory was a surprise, which unfairly deprived him of the opportunity to present evidence on replacement puts.

■■■■ The decision on a motion to reopen the proof for submission of additional evidence rests in the discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *B.V. Bureau Wijsmuller v. United States*, 702 F.2d 333, 342 (2d Cir.1983). Therefore, we review the court's denial of Janeway's motion only to determine whether the court abused its discretion. *Skehan v. Board of Trustees*, 590 F.2d 470, 480 (3d Cir.1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). Only "reasonably genuine surprise" on the part of the appellant, *Moylan v. Siciliano*, 292 F.2d 704, 705 (9th Cir.1961), combined with an assertion of the nature of the additional evidence,

*Berns v. Pan American World Airways*, 667 F.2d 826, 829 (9th Cir.1982), would give us sufficient reason to remand for the taking of additional evidence.

■■■ Janeway's assertion of surprise is unconvincing. The question of mitigation was discussed at length throughout the trial; the judge expressed considerable concern over the questions of mitigation and the measurement of damages. Although the replacement put theory was not specifically raised until the Friday before the Monday jury charge, defense counsel was certainly on notice that mitigation and damages were a part of the case. The replacement put theory of damages was not an unreasonable possibility in these circumstances. On Friday, Judge Owen requested the parties to consider his views on mitigation: "I want to give you my thoughts so over the weekend you can kick it around and correct me if I am wrong on Monday." J.App. at 622. The plaintiffs, who believed that no mitigation should be required, submitted a memorandum to the judge on Monday. Defense counsel, apparently confident that the judge agreed with him on the question of mitigation, refused the court's invitation to submit additional written arguments. In view of the judge's forewarning, we find defendant's complaint of unfair surprise unavailing. *Cf. Spesco, Inc. v. General Electric Co.*, 719 F.2d 233, 238–39 (7th Cir.1983) (appellant failed to carry "heavy burden" of showing district court's abuse of discretion in refusing to grant motion for continuance to respond to "new" theory of causation).

Moreover, defense counsel offered no proof as to the nature of the evidence he would have presented had his motion been granted. *Berns*, 667 F.2d at 829; *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 226 n. 4 (1st Cir.1976). This void, combined with defendant's failure to heed the court's invitation to submit additional arguments, convinces us that the denial of the motion to reopen was not an abuse of discretion.

■■■ Janeway's final argument is that the district court erred in allowing plaintiff

Cauchie to invoke the Fifth Amendment in response to questions asked on cross-examination concerning his alleged non-payment of Belgian income taxes and in refusing to allow defense counsel to comment on Cauchie's failure to testify. Here again, our scope of review is narrow. Limitations on the extent of cross-examination are left to the discretion of the trial judge. *Lewis v. Baker*, 526 F.2d 470, 475 (2d Cir.1975). We are concerned only with whether the trial judge abused his discretion in controlling the cross-examination of Cauchie. *Id.* Only if the alleged error was prejudicial may we find it an adequate basis for reversal. *United States v. Singh*, 628 F.2d 758, 763 (2d Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 609, 66 L.Ed.2d 496 (1980). *Cf. Dunbar v. Harris*, 612 F.2d 690, 692–93 (2d Cir.1979).

Issues concerning a party's credibility are generally collateral. *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir.1963). While it is true that a plaintiff may not attempt to deny defendants all opportunities to obtain potentially damaging information, assertion of the privilege against self-incrimination in response to questions on collateral issues is not improper. *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir.1969), *cert. denied*, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970); *Penn Communications Specialties v. Hess*, 65 F.R.D. 510 (E.D.Pa.1975). Where evidence sought on cross-examination relates only to credibility, a party may invoke the privilege against self-incrimination. Fed.R.Evid. 608(b).

Defendant refuses to concede that the desired information concerning Cauchie's alleged failure to pay income tax on his secret commissions relates only to credibility. However, any other offered explanation is so attenuated as to be implausible. Therefore, we hold that the district court did not abuse its discretion in allowing Cauchie to invoke his Fifth Amendment privilege.

Finally, the court's decision to prohibit defense counsel from commenting on Cauchie's assertion of the privilege does not require reversal. Even if the court's decision, viewed in the abstract, were to strike us as unwise, there was no great prejudice to defendant. Cauchie's assertion of the privilege took place in front of the jury. Even without a comment by the defense or an instruction from the judge, the jurors had the opportunity to draw inferences from Cauchie's refusal to answer the question. Moreover, defense counsel, in presenting his summation to the jury, found numerous opportunities to attack Cauchie's credibility without noting his use of the privilege. The court allowed these statements to be made and the jury still found for the plaintiffs. We do not believe that the verdict would have been different had the defense been allowed to add one additional statement to its litany of attacks on Cauchie's credibility. Therefore, we hold that defendant's final contention must also fail.

The judgment of the district court is affirmed.