Henry W. Lengyel, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, which proceeding is described as F. A. I. 502-5-3.12, Clinton County, Map No. 475 Parcels numbered 475 and 476. The aforesaid map and description was filed in the office of the Secretary of State on the 6th day of November, 1959; in the office of the County Clerk of Clinton County on the Gth day of September, 1960; and, personal service was made on the claimants on the 14th day of March, 1961. The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 2nd day of August, 1962, and has not been assigned or submitted to any other court or tribunal for audit or determination. We adopt the description of the appropriated property as shown on the map and description filed in the Clinton County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants were the owners of the property by reason of a deed dated June 1, 1944 from George H. Wright and Bessie M. Wright, grantors, to the claimants herein, grantees, and recorded in the Clinton County Clerk’s office on the 23rd day of June, 1944 in Liber 210 of Deeds at page 184.
*647 Before the appropriation the property consisted of 167* acres bounded by Spellman Road on the north and Route 9 on the east. There were 1900* feet of frontage on Route 9 and 2850* feet of frontage on Spellman Road. The land was divided into two parcels. The largest parcel laid immediately west of Route 9 and contained 140.66* acres. This parcel contained all the buildings, the bulk of the better quality farmland, a gravel ridge, and the road frontage. The other parcel of 26.34* acres laid to the west of the first parcel and joined same at its southwest corner. One should visualize two rectangles balanced one on top of the other at or near a point of the rectangles. There was access between these parcels prior to the appropriation. Located on the large parcel were the farmhouse, a one and three-quarter story wood frame structure on a mortared stone foundation ; two one and one-half story frame residence structures which were rented by claimants as income producing properties but which buildings have not been figured into the values herein; a wood frame dairy barn with attached structures with stable room for 34 milch cows and additional young stock; a wood stave silo; milkhouse; 2 hen houses; tool shop; two-car frame garage; hay barn; a granary; a small frame shed; and a general purpose barn and hen house.
The highest and best use of the property prior to the appropriation was commercial and/or strip residential for the Route 9 and Spellman Road frontage; gravel production for a 3.33* acre gravel ridge area; and, dairy farming of the remaining acreage. The highest and best use of the property after the appropriation was the same for the Route 9 and remaining Spellman Road frontage; the same for the gravel ridge area; and, the same for the dairy area except on a slightly reduced capacity because of the loss of land and drainage problems caused to part of the remaining land. We find that the acreage prior to the appropriation divided into the following amounts :
Route 9 frontage.................... 8.72* . 8.72+ acres
Spellman Road frontage ............. 13.3 * . 13.3 + acres
Gravel Ridge ................... . 3.33+ acres
Farming & Tenants site.............. 141.65* . 141.65+ acres
The farming acreage we have divided as follows: follows:
Farm & Tenant sites ............ . 3 + acres
Cropland in east parcel.............. 104.06* . 104.06+ acres
Cropland in west parcel.............. 14.18* . 14.18+ acres
Pasture in east parcel................ 8.25* . 8.25+ acres
Wooded pasture in west parcel........ 12.16* 12.16+ acres
*648 The subject proceeding appropriated approximately 23.129± acres of claimants’ property as follows: Parcel 475 was appropriated in fee with access and contains 0.557± acre. This is a strip of land on the south side of Spellman Road and affects 692 feet of frontage on said road. This parcel was taken primarily to construct the interchange from Route 87 onto Spellman Road and its banks near the Northway make access less suitable than prior to the appropriation. However, as there is still suitable access to the rear commercial land over the easterly portion of the appropriated land we have not damaged the commercial value of the remaining land.
Parcel 476 was appropriated in fee without access and contains 22.572± acres. This was an essentially rectangular parcel of land with the northeast boundary line flaring out to the east. This parcel severed claimants’ land south to north and took 724 feet of frontage on Spellman Road to the north and 472 feet on the south boundary line. This parcel landlocked the aforesaid west parcel of 26.34=t acres which contained 14.18± acres of cropland and 12.16± acres of wooded pasture land. The landlocked portion also contained an unfailing water supply which had been available to the whole farm operation. We have consequentially damaged this landlocked portion by 90%. A further effect of this appropriated parcel was to damage the drainage system of the land to the west of the gravel ridge. We do not agree with claimants’ appraiser that the drainage system was destroyed but we do find it was damaged, causing difficulty in plowing, sowing, and reaping crops, particularly in a wet year. We walked over this area during our views of this property.
This claim was previously tried in the Court of Claims and a decision (unreported) was rendered on October 3, 1963, in the sum of $15,970, being $3,970 direct damage and $12,000 consequential damage. The decision was appealed and the Appellate Division reversed the lower court in 21 A D 2d 727 and granted a new trial. The reversal was predicated on two grounds: (1) That the lower court was in error in refusing to offset what it considered a ‘ ‘ general benefit ’ ’ against consequential damages sustained by the remainder. (2) The record lacked any indication as to actual monetary loss in the operation of this farm after the appropriation. The Appellate Division did not decide there was a benefit, general or special, it merely stated that the trial court “ regarded any benefits to the remainder of the property as general benefits and as such they could not be offset ” (p. 728). Therefore we are free to evaluate *649 the evidence presented and to arrive at our own conclusion, based on the evidence, as to benefit.
We have closely examined the cases cited in the appellate decision and have come to the conclusion that the trial courts, including this one, and the trial lawyers, including those representing the State, have fallen into the careless habit of using the words “ general ” benefit and “ special ” benefit, probably because of the descriptive ease of those words. As was pointed out in Bohm v. Metropolitan El. Ry. Co. (129 N. Y. 576), we should only be concerned with the actual damage caused the remaining land. If it held its value in spite of the improved road there is obviously no damage. If it increased in value because of the improved road then there is a benefit which we must set off against consequential or severance damage. As the Court of Appeals stated (p. 592 et seq): “ I confess I have been and am wholly unable to see the least materiality in the distinction between what are termed special and general benefits to the property left, or whether such benefits have been caused by the defendants. Strictly speaking it is not a question of benefits at all, except that proof of benefits may be one way of showing there has been no injury. # * * The question is, what in fact, has been the actual result upon the land remaining? Has its actual market value been decreased by the taking, or has the taking prevented an enhancement in value greater than has actually occurred, and if so, to what extent? * * * It is only necessary for us in this case to decide that if the property of the plaintiffs have increased in value since the taking of these easements or a portion of them, and if such increase is largely due to the building and operation of the defendants’ road, and if such increase would not have been greater but for the action of defendants, then the plaintiffs have suffered no damage. Whether the increase is common to every other owner in the avenue and is greater in proportion with some owners of property in the side streets than with the plaintiffs, are matters of no importance. The plaintiffs are not damaged because their neighbors are benefited to an even greater extent than they are by the defendants’ road.” We are, therefore, concerned in this trial with the actual damage sustained by this property and one of the factors in arriving at such damage is the actual benefit, if any, conferred on the remaining land by this highway improvement.
It is our opinion that the State must do more than present to the court a study made of expressway interchanges and then expect the court to take the position that, because such a study *650 indicates that interchanges generally enhance value, this particular interchange has enhanced the value of this claimants’ remaining property. There should be some foreseeability to the enhancement not vague statements that it will be enhanced when the demand catches up with the supply. To paraphrase Matter of City of Rochester (Smith St. Bridge) (234 App. Div. 583) care must be taken not to substitute for reality the mere hope yf the State that the remaining property has been enhanced by the improvement. There should be a showing of more than traffic counts because increase in traffic might damage as well as enhance. Of course, increased traffic being considered a benefit or enhancement points up the anomalous situation that diversion of traffic is considered damnum absque injuria. There should be shown type, direction, and reason for traffic flow and the effect of traffic on property values in the area. As the State left the before and after value of the Route 9 frontage the same, we must assume that the State did not consider the interchange and increased traffic a benefit to that remaining property, although located less than one-half mile from and in plain view of the interchange. The only concrete proof presented by the State was a sale in 1963 of land opposite claimants’ land on Spellman Road, for the alleged construction of a motel. We viewed the property in January, 1965, and again in May, 1965, and there was nothing constructed on this site, merely some excavation and footings and an air of abandonment. This sale the State’s appraiser estimated at $7 .a front foot but it could just as correctly be within the $5 a front foot allocated to Spellman Road frontage by claimants’ appraiser; and, we so find. The State also alluded to the so-called Conroy Apartments on Spellman Road and opposite claimants’ property. From our viewing we believe this was the type of construction and utility that fell well within the $5 a front foot range of claimants’ appraiser. It is our opinion, and we so find, that this interchange did not benefit claimants’ property. It merely made it easier for traffic to flow past claimants’ property on the way to the nearby resort areas of Lake Champlain. In fact, it might even have damaged the residential potential of this property but, as no proof was submitted on that point, we cannot determine that fact.
If we had found an actual benefit, we would have been reluctant to apply it to the consequential damage caused by the landlocked 26.34± acres. This 90% damage is so close to a direct damage that we believe it would have been manifestly inequitable so to do. Perhaps the rule should be changed to read that actual benefit must be set off against useable remaining land.
*651 . As to the farm damage the claimants did present milk payment figures which reflected a substantial monetary drop after the appropriation. However, as always when considering profits, even gross profits, it is difficult to ascertain how much of the loss was caused by the appropriation and how much by management factors. We do not believe the drop in milk receipts was solely or even mainly caused by the appropriation.
We find that the appropriation reduced the size of the farm by 45.592± acres, of which 33.432± acres was cropland and 12.16± acres was wooded pasture. We find the appropriation removed an excellent source of water from the farm operation. We find the appropriation caused a drainage problem to the useable cropland in the area of the appropriation. We find a reduction in milk herd from 40 to 30, part of which we attribute to management approach.
It is our opinion, particularly taking note of the State’s witness Dr. Harrison although not completely accepting his approach, that this farm sustained a 20% consequential damage which we apply to the farmland east of the Northway and to the farm buildings, exclusive of the farm house and two tenant houses plus one and one-half acres for the site of those buildings.
We have arrived at the following before and after fair market values and damages:

The claimants are awarded the sum of $13,685.70 for all damages, direct and consequential, with interest thereon from September 6, 1960 to March 6, 1961 and from August 2, 1962 to the date of entry of judgment herein.
The award to claimants herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, *652 their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage, and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.