32 N.Y.2d 164 (1973)
James P. Wilmot, Sr. et al., Respondents,
v.
State of New York, Appellant. (Claims Nos. 49084, 51429.)
Court of Appeals of the State of New York.
Argued January 3, 1973.
Decided April 25, 1973.
Louis J. Lefkowitz, Attorney-General (Grace K. Banoff and Ruth Kessler Toch of counsel), for appellant.
Arthur S. Chatman for respondents.
Chief Judge FULD and Judges BURKE and WACHTLER concur with Judge JONES; Judge JASEN dissents and votes to reverse in a separate opinion; Judges BREITEL and GABRIELLI taking no part.
*166 JONES, J.
We affirm the order of the Appellate Division which sustained the award made by the Court of Claims.
In 1958, claimants purchased some 49 acres of land in the Town of Henrietta, just south of the City of Rochester, for development as a regional shopping center. In 1967 they learned that the projected route of the Genesee Expressway would go through their property and that the State contemplated appropriating for that purpose an 11-acre strip of land which would bisect the 49-acre tract, thereby rendering it unsuited for development as a regional shopping center. With the appropriation *167 imminent, claimants entered into an option agreement dated June 1, 1967 to sell to Lenrich Associates 24 acres comprising the westerly portion of the original tract which would remain after the bisecting appropriation, at a price of $28,000 per acre. Performance by the purchaser was expressly made conditional on the purchaser's satisfying itself that soil and drainage conditions and zoning restrictions would permit construction of a shopping center, and on the purchaser's obtaining a firm lease from a supermarket operator covering not less than 20,000 square feet of ground floor retail area within the premises. Specific provisions were contained in that agreement for co-ordination of the sale of the 24-acre parcel with the appropriation by the State.
The actual date of the taking by the State was June 13, 1967, when the State appropriated 11 acres in the middle of the original 49-acre tract. The claimant was then left with two noncontiguous parcels of the original trace  the 24-acre westerly parcel which was subject to the option agreement with Lenrich Associates, and an approximately 14-acre parcel on the east.
The specified conditions having been met to the purchaser's satisfaction, Lenrich Associates exercised its rights to purchase the 24-acre westerly parcel and title was closed on October 12, 1967.
Claimants then instituted the present action to recover damages for the taking of the 11 acres by the State, and for consequential damages to the remaining easterly 14-acre parcel.
The Court of Claims found that the highest and best use of claimants' property was as a regional shopping center, predicating such finding on the character and potentiality of the original 49-acre tract. On this basis the Court of Claims found a per-acre value of $24,000 for the land appropriated and, using the same figure for pretaking value and an after-taking figure of $15,000 computed consequential damages at $9,000 per acre for the claimants' remaining easterly 14 acres.[1]
*168 The State argues that by negotiating the option agreement with Lenrich Associates looking to the sale of the westerly 24-acre parcel, the claimants themselves frustrated the use of their property for the development of any regional shopping center. The testimony as to use for regional shopping center purposes assumed the availability of 49 acres; there was no testimony that 25 acres would be sufficient for the development of a regional shopping center. The State contends that the Court of Claims should have determined highest and best use on the basis of the remaining 25 acres only, and that accordingly it erred in basing its computations on use for a regional shopping center at $24,000 per acre.
We agree with the Court of Claims. Confronted as that court found them to be with imminent appropriation of a central portion of their land, the claimants in good faith took steps to mitigate their damages by the disposition of the 24-acre westerly parcel. In consequence of this action the State was relieved of all claims for compensation with respect to these 24 acres. Obviously this land was not itself appropriated by the State. The State's exposure to claims for consequential damage with respect to this parcel, however, was entirely eliminated in consequence of the sale to Lenrich Associates. The present claimants would no longer be owners and were thus foreclosed from asserting any such claim. Lenrich Associates, the new owners to be, on the other hand, had no predicate for any such claim because the State was taking no part of their property. Accordingly, no part of the award made by the Court of Claims includes any compensation by way of either direct or consequential damages, attributable to the 24-acre parcel later conveyed to Lenrich Associates.
The claimants should not be prejudiced because they took steps in the face of imminent appropriation prudently to mitigate damages. "As Judge SELDEN observed years ago, there rests on a party seeking damage `the active duty of making reasonable exertions to render the injury as light as possible' (Hamilton v. McPherson, 28 N Y 72, 77). * * * the party seeking damages is under the duty to make a `reasonable effort' to avoid consequences of the act complained of [People's Gas & Elec. Co. v. State of New York (189 App. Div. 421, 424)]. It is, indeed, a rule of broad acceptance that `No recovery may be *169 had for losses which the person injured might have prevented by reasonable efforts and expenditures' (25 C. J. S., Damages, § 33, p. 698; see, also, 29A C. J. S., Eminent Domain, § 155, p. 655)." (Mayes Co. v. State of New York, 18 N Y 2d 549, at p. 554.)
Had the claimants made no effort to dispose of the westerly 24-acre parcel prior to the taking, there would be no question but what the highest and best use would have been predicated on the original 49-acre parcel.[2] It ill becomes the State now to seek in effect to penalize the claimants because they sought (and succeeded) in good faith and with economic common sense to mitigate the consequences of a forced appropriation by the State which was not of their making and may have been most unwelcome to them.
"The constitutional requirement of just compensation requires that the property owner be indemnified so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred" (City of Buffalo v. Clement Co., 28 N Y 2d 241, at p. 258, citations omitted).
In our view, the courts below were justified in concluding on these facts that the prospective sale to Lenrich Associates was in time[3] and substance so clearly referrable to the appropriation as to be incidental to and inseparable from it. Accordingly the Court of Claims properly computed the claimants' compensation as of the date of the appropriation based on the character of the property immediately before the appropriation and the appropriation-related sale.
The order of the Appellate Division should be affirmed.
JASEN, J. (dissenting).
In this eminent domain case, claimants have been awarded damages of $346,204 in consequence of the State's appropriation of land for a highway. I do not think that the award is legally sustainable and, accordingly, dissent.
*170 In 1958, claimants purchased approximately 49 acres of land in the Town of Henrietta, near the City of Rochester, for development as a regional shopping center. Subsequently, they learned that the projected route of the Genesee Expressway bisected the property, thereby rendering it unsuitable for their intended purpose.[1] Thereafter, on June 1, 1967, claimants agreed to sell to Lenrich Associates the portion of the property  some 24 acres in all  lying west of the projected appropriation at a selling price of $28,000 per acre.[2] The actual taking came on June 13, 1967, when the State appropriated 11 acres of the 49-acre tract. The Court of Claims awarded direct damages for the 11 acres actually taken and consequential damages for the remaining 14 acres on the basis of the per-acre value ($24,000) of the entire 49-acre tract at its highest and best available use as a regional shopping center. In so doing, I think it erred.
As a general rule, damages in a condemnation proceeding are to be assessed and compensation determined at the time of the taking. (Arlen of Nanuet v. State of New York, 26 N Y 2d 346, 356; 19 N. Y. Jur., Eminent Domain, § 143.) For purposes of determining compensation, the date of the taking is ordinarily the date that title vests in the condemnor unless a prior de facto taking is made out. (City of Buffalo v. Clement Co., 28 N Y 2d 241, 253-254.) Additionally, certain affirmative value-depressing acts on the part of the condemnor, although not rising to a de facto taking, may require that evidence of value prior to such acts be received in determining just compensation ("condemnation blight" theory). (City of Buffalo v. Clement Co., supra, at p. 254.)
Neither the de facto taking theory nor the "condemnation blight" theory was argued below or is appropriate on these facts. There simply was no physical invasion or imposition of some direct legal restraint sufficient to make out a de facto taking in advance of actual condemnation. (City of Buffalo v. Clement Co., supra, at pp. 247, 255-257.) *171 Nor do I discern any affirmative value-depressing acts on the part of the condemnor within the meaning of the "condemnation blight" theory. (E.g., unreasonable delay of eminent domain action following announcement of intent to condemn or other unreasonable conduct prior to condemnation.)
Nor am I persuaded by the argument that in selling the 24-acre parcel to Lenrich prior to the taking, claimants mitigated the scope of potential consequential damages. The argument continues that claimants, thus, ought not be denied compensation computed on the basis of the highest and best use of the entire tract as a regional shopping center. I would note, however, that had claimants retained the 24-acre parcel, severance or consequential damages could have been allowed only if its value were decreased by the taking. (See, e.g., Gilmore v. State of New York, 208 Misc. 427, 435; 19 N. Y. Jur., Eminent Domain, § 141.) Here the evidence is that its value was increased, rather than decreased. Furthermore, if it were found that the 24-acre parcel did, in fact, benefit from the projected improvement, the State would be entitled to a setoff against the consequential damages to the entire residue. (Matter of City of New York [Exterior St.], 285 N.Y. 455; Dennis v. State of New York, 24 A D 2d 924; Brand v. State of New York, 46 Misc 2d 645, mod. and affd. 26 A D 2d 747, affd. 19 N Y 2d 634; see, generally, 19 N. Y. Jur., Eminent Domain, §§ 252-256; see, also, Ann., Eminent Domain: Deduction of Benefits in Determining Compensation or Damages in Proceedings Involving Opening, Widening, or Otherwise Altering Highways, 13 ALR 3d 1149, 1160, 1165, 1187.)
In sum, the method of computing damages employed in the instant case results in an award in excess of claimant's actual loss and works an injustice on the public which ultimately must pay the award. I recognize, however, that under the existing rules of damages the threat of imminent condemnation may have a chilling effect on the alienability of property. That is to say, an individual faced with imminent condemnation depriving him of the intended use of his land may hesitate to dispose of marketable portions thereof (thereby destroying its highest and best use), lest he deprive himself of the most advantageous compensation available in condemnation. I would agree, therefore, that, in an appropriate case, an individual who, faced with *172 imminent condemnation, disposes of part of an integral tract, may have direct and consequential damages computed on the basis of the highest and best use of the whole tract prior to disposing of a part thereof. In that event, the award for consequential damages to the remainder should be offset by the benefit, if any, accruing, by virtue of the taking, to the parcel previously sold. This more closely comports with just compensation  not only for the condemnee, but for the public as well.
Order affirmed, with costs.
NOTES
[1] For purposes of this opinion we use rounded figures and have simplified other factual title aspects. Portions of the lands appropriated were subject to water easements. The issue raised on this appeal is unaffected by these details, which in each instance appear appropriately to have been taken into account by the Court of Claims in its computations.
[2] The State also asserts that even on the basis of a 49-acre tract the evidence was insufficient to justify a finding that the highest and best use was as a "regional shopping center" rather than for "industrial, commercial and service uses." It suffices to note that the record discloses conflicting testimony. We find no sufficient basis to disturb the finding of the Court of Claims here as to highest and best use.
[3] Actually there was an interval of but a single day. The last of the claimants' acknowledgments on the June 1 agreement was taken on June 12 and the taking by the State occurred on June 13.
[1] There was testimony that a minimum of 49-50 acres is required for a regional shopping center.
[2] The Court of Claims characterized the agreement of June 1, 1967, as a sale even though the deed passed later. At any rate, by virtue of the agreement, and on the date of the actual taking, Lenrich was the equitable owner of the westerly 24 acres. (Matter of City of New York [Jefferson Houses  Lombardi], 306 N.Y. 278, 282.)