■ MITCHELL T. WILLIAMS, Respondent, v STANLEY K. FISHER, as Executor of MILTON FISHER, Deceased, et al., Appellants. (Appeal No. 1.) [716 NYS2d 348] —Appeal unanimously dismissed without costs (*see*, CPLR 5501 [a] [1]). (Appeal from Order of Supreme Court, Monroe County, Polito, J.—Summary Judgment.) Present—Pigott, Jr., P. J., Hayes, Hurlbutt, Scudder and Lawton, JJ.

■ MITCHELL T. WILLIAMS, Respondent-Appellant, v STANLEY K. FISHER, as Executor of MILTON FISHER, Deceased, et al.,

Appellants-Respondents. (Appeal No. 2.) [715 NYS2d 571] —Order and judgment unanimously modified on the law and as modified affirmed without costs and new trial granted on damages only in accordance with the following Memorandum: Defendants appeal and plaintiff cross-appeals from an order and judgment entered upon a jury verdict awarding plaintiff damages in the amount of $200,000 in this action for accounting malpractice. We reject the contention of defendants that Supreme Court erred in denying their motion for a directed verdict (*cf., Blackburn v Eastman Kodak Co.,* 266 AD2d 891, *lv denied* 94 NY2d 760). Furthermore, the court properly denied defendants' motion for judgment notwithstanding the verdict; it cannot be said that as a matter of law the verdict is not supported by the evidence (*see, Cohen v Hallmark Cards,* 45 NY2d 493, 499).

According to the verdict sheet, the jury determined that Joseph P. Grymin, a former partner of defendants' accounting firm and the personal accountant for plaintiff, approached plaintiff regarding investing in a time-share project in Florida. In 1983 plaintiff, Grymin and a third party entered into a joint venture agreement to purchase property in Florida that would be converted to a time-share condominium project. In March 1983, plaintiff paid a bill he received from the accounting firm, which he testified could only have been a bill for services in connection with the investment advice given him by Grymin with respect to the time-share project. In reliance upon Grymin's advice, plaintiff agreed to invest $50,000 and became a co-obligor on a line of credit for $100,000 in order to advance the time-share project. Throughout 1983 and 1984, Grymin prepared reports for plaintiff on the progress of the project, and some of those reports were prepared on the stationery of the accounting firm. In September 1984, Grymin secured a contract for the purchase of the Florida property and secured mortgage financing from the seller and two financial institutions. Plaintiff was required to invest $120,000 in order for the sale to close and was further required to provide a personal guarantee for portions of the mortgage loans. In January 1985, Grymin recommended to plaintiff that the project borrow short-term operating funds in the amount of $230,000 from two financial institutions. In reliance on Grymin's reports, plaintiff provided the required guarantees for those short-term loans. In the summer of 1985, Grymin reported further cash flow problems to plaintiff, but assured him that the problems were temporary and would be remedied by an injection of cash. Financing was arranged, but Grymin left the accounting firm prior to closings on loans from Monroe Savings Bank, which were secured by a

mortgage executed in December 1985, and a commitment by Tammac Resort Development Corporation (Tammac), which was honored in January 1986. At the request of the financial institutions, plaintiff executed personal guarantees on both loans.

In early 1986, plaintiff received a notice of levy from the Internal Revenue Service (IRS) for delinquencies in the payment of payroll taxes commencing in the summer of 1985. Plaintiff paid the IRS $139,099.74 to settle the claim of the IRS for nonpayment of withholding taxes.

The time-share project failed, and in 1987 the property was deeded back to the sellers. As part of the agreement with the sellers, plaintiff was obligated to pay various lenders sums in excess of $250,000 based on the personal guarantees that he had given. Plaintiff, the majority shareholder, president and director of MTW Development Corporation (MTW), further agreed to pay the $150,000 debt owed by MTW to Monroe Savings Bank. Plaintiff did so by depositing $150,000 of his personal funds in the MTW account, and the corporation then issued a check for $150,000 to Monroe Savings Bank. The release from Monroe Savings Bank included a release of plaintiff personally. As part of the agreement with the sellers, plaintiff was to receive 50% of the profits of the sale of time-share paper held by various financial institutions. A trust entitled the "Sweet Trust" was established to implement the agreement with the sellers. Plaintiff received $109,531.56 pursuant to that agreement.

The detailed verdict sheet provided to the jury outlined the actions of Grymin as they related to plaintiff and the time-share project. The jury found that Grymin's actions as a partner in the accounting firm deviated from accepted standards of accounting practice and were the proximate cause of plaintiff's damages. The court did not permit the jury to consider the alleged damages of plaintiff with respect to his payment of the $150,000 debt of MTW to Monroe Savings Bank, or his payment to the IRS, nor did it permit the jury to consider the receipt by plaintiff of $109,531.56 in mitigation of his damages. The jury was not asked to itemize the damages awarded, but rather was instructed to state the total dollar amount of damages, if any, that were sustained by plaintiff. However, after the jury returned its verdict awarding plaintiff damages in the amount of $200,000, the court instructed the jury to return to the jury room and itemize the damages awarded. The jury found that plaintiff sustained damages of $142,595 with respect to the 1984 loans from financial institu-

tions and $57,405 as a percentage of the December 1985 loan from Monroe Savings Bank.

The court erred in denying plaintiff's motion to set aside the verdict on damages as against the weight of the evidence (*see,* CPLR 4404 [a]). The jury found defendants liable based on the actions of Grymin, and defendants do not dispute the amounts that plaintiff paid to various financial institutions or the amount of plaintiff's initial investment in the project. Thus, the jury's verdict awarding only a percentage of the Monroe Savings Bank debt could not have been reached upon any fair interpretation of the evidence (*see generally, Barresi v Kapr,* 226 AD2d 1074, *appeal dismissed* 88 NY2d 1005; *Nicastro v Park,* 113 AD2d 129, 134). If plaintiff relied upon Grymin's advice with respect to the Monroe Savings Bank loan, he relied upon that advice with respect to the entire loan, and thus the jury's award of only a portion of his damages with respect to it cannot stand. Furthermore, plaintiff personally guaranteed the debt to Tammac based on the same information from Grymin on which he relied in personally guaranteeing the December 1985 Monroe Savings Bank debt, and thus the award of damages on the Monroe Savings Bank debt but not on the Tammac debt also is against the weight of the evidence. Moreover, plaintiff's initial investment of $120,000 was not awarded as an item of damages despite the jury's finding that Grymin acted as a partner in the accounting firm when giving advice to plaintiff and not as plaintiff's individual investment partner. Furthermore, we conclude that the court's unorthodox request that the jury itemize its award of damages after returning its verdict resulted in a verdict sheet that "was on its face, 'unclear and confusing'" with respect to the items of damages that the jury intended to award plaintiff (*Moore v Bohlsen Assocs.,* 141 AD2d 468). We do not disturb the apportionment of fault because the verdict sheet with respect to liability specifies those actions of Grymin for which defendants were liable. We therefore modify the order and judgment by vacating the award of damages and we grant a new trial on damages only.

In addition, the court erred in refusing to permit the jury to consider the contention of plaintiff that he is entitled to recover the $150,000 that was paid by MTW to Monroe Savings Bank for a loan that he had personally guaranteed (*see, Post & Co. v Sidney Bitterman, Inc.,* 219 AD2d 214, 225). The court also erred in refusing to permit the jury to consider his payment of $139,099.74 to the IRS as damages. Although the verdict sheet indicates that Grymin did not violate acceptable accounting practices in refusing to advise plaintiff of the tax delinquen-

cies, plaintiff may be entitled to damages in the amount of $139,099.74, paid to the IRS, in view of the jury's finding of liability on questions two and three of the verdict sheet (*see generally, Argentina v Emery World Wide Delivery Corp.,* 93 NY2d 554, 560, n 2). Moreover, the court erred in refusing to permit the jury to consider the issue of mitigation with respect to the $109,531.56 that plaintiff received from the "Sweet Trust" (*see generally, Wilmot v State of New York,* 32 NY2d 164, 168-169, *rearg denied* 33 NY2d 657). Those three items therefore must be submitted to the jury on retrial. We have considered the remaining contentions of the parties and determine that, in view of our decision, they either are without merit or are moot. (Appeals from Order and Judgment of Supreme Court, Monroe County, Polito, J.—Negligence.) Present—Pigott, Jr., P. J., Hayes, Hurlbutt, Scudder and Lawton, JJ.