# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**326**

**CA 13-01250**

PRESENT: SMITH, J.P., FAHEY, PERADOTTO, CARNI, AND SCONIERS, JJ.

---

ROSE PARK PLACE, INC., COLUMN DEVELOPMENT, INC.,
E.L. FREEMAN ROAD, LLC, FRED HANANIA, MARY JO
LOBRUTTO AND ROGER PASQUARELLA,
CLAIMANTS-RESPONDENTS,

                    V                                              OPINION AND ORDER

STATE OF NEW YORK, DEFENDANT-APPELLANT.
(CLAIM NO. 114089.)
(APPEAL NO. 1.)

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (OWEN DEMUTH OF
COUNSEL), FOR DEFENDANT-APPELLANT.

MAGAVERN MAGAVERN GRIMM LLP, BUFFALO (EDWARD J. MARKARIAN OF COUNSEL),
FOR CLAIMANTS-RESPONDENTS.

---------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Court of Claims (Michael E. Hudson, J.), entered September 14, 2012.  The judgment awarded claimants money damages for the appropriation of land pursuant to the Eminent Domain Procedure Law and the Highway Law.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the award of consequential damages and substituting therefor an award of $1,925,275 with interest of 9% per annum for the period from July 25, 2006 to September 14, 2012 and as modified the judgment is affirmed without costs.

Opinion by FAHEY, J.:  Here we address the issue whether consequential damages may be awarded when the real property in question was sold months before the taking of other real property that affects the land in question.  Claimants commenced this proceeding seeking damages for the diminished value of approximately 16 acres of what claimants characterized as "remaining land" following defendant's taking of approximately 1.22 acres of land from what was claimants' 17.3-acre parcel.  Following a trial, the Court of Claims awarded claimants consequential damages with respect to what the court concluded was 12.835 acres of that parcel.  Included in the 12.835 acres of land for which the court awarded consequential damages were 4.63 acres of land sold by claimants to Progressive Casualty Insurance Company (Progressive Parcel) for $1,800,000.  That sale occurred in November 2005, i.e., before the taking of the aforementioned 1.22 acres of land in July 2006.  Defendant now contends that the award of consequential damages was excessive inasmuch as the court erroneously

awarded consequential damages for the Progressive Parcel.  We agree.

I

Our analysis begins "with the proposition that [i]t is constitutionally mandated that the sovereign will pay just compensation for property it takes by its powers of eminent domain. Just compensation is properly measured by determining what the owner has lost" (*Matter of USA Niagara Dev. Corp. [Settco, LLC]*, 51 AD3d 377, 379, *lv denied* 11 NY3d 704 [internal quotation marks omitted]). Put differently, "[w]hen [defendant] takes property by eminent domain, the Constitution requires that it compensate the owner 'so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred' " (*Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d 353, 359, *rearg denied* 11 NY3d 903, quoting *City of Buffalo v J. W. Clement Co., Inc.*, 28 NY2d 241, 258, *rearg denied* 29 NY2d 640 [hereafter, *Clement*]).

"When there is a partial taking of land, damages are measured 'by finding the difference between the fair market value of the whole before the taking and the fair market value of the remainder after the taking' " (*Erie County Indus. Dev. Agency v Fry*, 254 AD2d 721, 721-722, quoting *Acme Theatres v State of New York*, 26 NY2d 385, 388; *see McDonald v State of New York*, 42 NY2d 900, 900; *National Fuel Gas Supply Corp. v Goodremote*, 13 AD3d 1134, 1135).  Therefore, "when [defendant] takes part of a condemnee's property and leaves a remainder, just compensation includes not only the direct damages for the portion that was taken, but also any consequential or indirect damages caused by the taking that impaired the remaining portion of the property . . . Consequential damages are measured by the difference between the before and after values, less the value of the land and improvements appropriated . . . The burden of proof is on the claimant to establish indirect damages and to furnish a basis upon which a reasonable estimate of those damages can be made" (*Lerner Pavlick Realty v State of New York*, 98 AD3d 567, 568).

II

Before us here is not an issue concerning the *amount* of consequential damages with respect to the Progressive Parcel, but the issue whether *any* such damages should have been awarded relative to that parcel.  Viewed as a whole, the Court of Appeals' decision in *Wilmot v State of New York* (32 NY2d 164, 167-168, *rearg denied* 33 NY2d 657) stands for the proposition that the condemnee is allowed to multiply the higher per-acre value of the original parcel by the number of acres under his or her ownership at the time of the taking, not by the acreage he or she once owned and had previously sold (*see also 90 Front St. Assoc., LLC v State of New York*, 79 AD3d 708, 710). In view of that proposition of law, here the court properly excluded the sale of the Progressive Parcel in calculating the pre-taking, per-acre value of claimants' parcel.  The court, however, erred in including the Progressive Parcel in the acreage for which it awarded consequential damages.

Claimants attempt to evade *Wilmot* by contending that the part of that case providing that consequential damages are unavailable relative to property that is sold prior to a planned taking and from which no land is ultimately appropriated is dicta.  We reject that contention.  " 'To identify dictum, it is useful to turn the questioned proposition around to assert its opposite, or to assert whatever alternative proposition the court rejected in its favor.  If the insertion of the rejected proposition into the court's reasoning, in place of the one adopted, would not require a change in either the court's judgment or the reasoning that supports it, then the proposition is dictum.  It is superfluous.  It had no functional role in compelling the judgment' " (*People v Taylor*, 9 NY3d 129, 164 [Read, J., dissenting], quoting Leval, Madison Lecture: *Judging Under the Constitution: Dicta about Dicta*, 81 NYU L Rev 1249, 1257 [2006]).  Applying that test here, we conclude that the part of *Wilmot* at issue is a secondary holding, i.e., that such determination was necessary to *Wilmot*'s primary holding with respect to the unsold land and is therefore law (*see Pollicino v Roemer & Featherstonhaugh*, 277 AD2d 666, 667-668; *see also Matter of Hellner v Board of Educ. of Wilson Cent. Sch. Dist.*, 78 AD3d 1649, 1650-1651; *cf. United States v Henderson*, 961 F2d 880, 882).

Claimants further attempt to avoid the holding of *Wilmot* through reference to the "condemnation blight" doctrine, but that attempt likewise fails.  *Clement* teaches that a de facto taking "requires a physical entry by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property.  On the other hand, 'condemnation blight' relates to the impact of certain [value-depressing] acts [on the part of the condemning authority] upon the value of the subject property.  It in no way imports a *taking* in the constitutional sense, but merely permits of a more realistic valuation of the condemned property in the subsequent *de jure* proceeding.  In such a case, compensation shall be based on the value of the property at the time of the taking, as if it had not been subjected to the debilitating effect of a threatened condemnation" (28 NY2d at 255; *see id.* at 254).

*Clement* also teaches that, "[i]n . . . cases where true condemnation blight is present, the claimant may introduce evidence of value prior to the onslaught of the 'affirmative value-depressing acts' " (*id.* at 257-258).  In other words, the concept of condemnation blight "relates to the rules of evidence" (*id.* at 254), and is relevant to the measurement of damages; indeed, "when damages are assessed on [a] claim for [a] *de jure* appropriation, the claimant's property should be evaluated not on its diminished worth caused by the condemnor's action, but on its value except for such 'affirmative value-depressing acts' of the appropriating sovereign" (*id.* at 258).  *Clement* does not, however, impact the application of the *Wilmot* principle, pursuant to which consequential damages are unavailable relative to property that is sold prior to a planned taking and from which no land is ultimately appropriated.

Inasmuch as claimants did not own the Progressive Parcel at the time of the taking, the concept of condemnation blight is irrelevant here.  Moreover, even if claimants frame their claim for de facto taking by reference to condemnation blight, such characterization is unpersuasive inasmuch as there was no "physical entry by the condemnor, . . . physical ouster of the owner, . . . legal interference with the physical use, possession or enjoyment of the property or . . . legal interference with the owner's power of disposition of the [Progressive Parcel]" (*id.* at 255).

### III

We now turn to the issue of the remedy.  Here, defendant challenges not the amount of consequential damages per square foot, but the square feet subject to an award of consequential damages.  The square footage at issue is known to us, and defendant does not contest either the court's pre-taking valuation of the land at issue ($450,000 per acre or $10.33 per square foot) or the post-taking value of the land at issue ($1,766,625).

Our analysis is therefore straightforward:  absent the Progressive Parcel, there are 8.21 acres of land for which consequential damages may be awarded.  Multiplying the pre-taking value of $10.33 per square foot by 357,628 square feet yields a product of $3,694,297.24.  Subtracting $1,766,625 (the post-taking value of the land at issue) yields a difference of $1,927,672.24 in consequential damages.  That figure is $281,103 less than what the court awarded in consequential damages and, consistent with claimants' suggestion, we conclude that the judgment should be modified by vacating the award of consequential damages and substituting therefor an award of $1,925,275 with an interest rate of 9% per annum covering the period from July 25, 2006 to September 14, 2012.

### IV

Accordingly, we conclude that the court erred in awarding consequential damages for the Progressive Parcel, and that the judgment should be modified by vacating the award of consequential damages and substituting therefor an award of $1,925,275 with an interest rate of 9% per annum covering the period from July 25, 2006 to September 14, 2012.

Entered:  May 2, 2014                          Frances E. Cafarell
                                               Clerk of the Court