Peters, P.J.
Appeals (1) from an order of the Supreme Court (McGuire, J.), entered December 14, 2015 in Sullivan County, which, in a proceeding pursuant to EDPL article 5, determined the compensation due claimant as a result of the acquisition of an easement on real property, and (2) from a judgment entered thereon.
The facts underlying this property dispute are set forth in greater detail in this Court’s related decision in Matter of Eagle Cr. Land Resources, LLC v Woodstone Lake Dev., LLC (108 AD3d 71 [2013]). Respondents are the owners and operators of a hydroelectric facility known as the Swinging Bridge Project (hereinafter the project) under a license from the Federal Energy Regulatory Commission (hereinafter FERC). The project encompasses three reservoirs, including the Toronto Reservoir, located in the Town of Bethel, Sullivan County. As one of the conditions of the FERC license, the owner-operator of the project is required to maintain a public recreational area on the southeast bank of the Toronto Reservoir consisting of a boat launch and a 15-car parking area. Respondents’ predecessor in interest, AER NY-GEN, LLC (hereinafter AER), provided access to the recreational area via a utility access easement (hereinafter UAE).
Claimant, Woodstone Lake Development, LLC, acquired the *1325 property surrounding the Toronto Reservoir in 2000, following which purchase the public continued to use roads that traversed the property to access the recreational area. In the meantime, claimant developed the property into an exclusive, private, gated residential community called Chapin Estate. Disputes arose regarding the public’s use of the private roads and, ultimately, claimant began to block the public’s access to the recreational area across its property.
In 2010, while the issue of the public’s access through claimant’s property was still being disputed, AER filed an application to transfer its license to operate the project to respondents. That application was dismissed on the ground that AER had not met the requirement of the license that it ensure public access to the recreational area. As a result, AER commenced an EDPL article 4 proceeding seeking to acquire by condemnation a public access easement (hereinafter PAE) to the recreational area across the subject roads through claimant’s property. Supreme Court (Melkonian, J.) granted the petition and directed AER to, among other things, file an undertaking in the amount of $402,000. On appeal, this Court affirmed the taking, as well as the amount of the bond (id. at 80). The resulting PAE is a 50-foot-wide limited[1] easement over 1.8 miles of existing private gravel roads abutting 22 parcels, encompassing 36 properties, owned by claimant.
In 2012, claimant and Chapin Estate Homeowners Association each commenced a proceeding pursuant to EDPL article 5 by filing a claim for additional compensation for the taking. Following a trial, as well as a physical inspection of the PAE and the property through which it passes, Supreme Court (McGuire, J.) ordered that respondents pay compensation to claimant in the amount of $297,000 with interest as of the date of the taking, as determined by respondents’ appraiser. Claimant appeals.
When private property is taken for public use, the condemnor must “compensate the owner so that he [or she] may be put in the same relative position, insofar as this is possible, as if the taking had not occurred” (Matter of City of New York [Kaiser Woodcraft Corp.], 11 NY3d 353, 359 [2008] [internal quotation marks and citation omitted]; see US Const, 5th Amend; NY Const, art I, § 7 [a]). The award “must reflect the fair market value of the property in its highest and best use on the date of *1326 the taking, regardless of whether the property is being put to such use at the time” (Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 865 [2016] [internal quotation marks and citation omitted], lv denied 28 NY3d 901 [2016]; see Matter of County of Suffolk [Firester], 37 NY2d 649, 652 [1975]). Fair market value of real property is “the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell” (Matter of Board of Water Supply of City of N.Y., 277 NY 452, 457 [1938] [internal quotation marks and citation omitted]; see Matter of Metropolitan Transp. Auth. [Longridge Assoc., L.P.], 122 AD3d 856, 857 [2014]).
“Where, as here, there is a partial taking of real property, the measure of damages is the difference between the value of the whole before the taking and the value of the remainder after the taking” (Matter of County of Orange v Monroe Bakertown Rd. Realty, Inc., 130 AD3d 823, 825 [2015] [internal quotation marks and citation omitted]), plus “consequential damages, which consist of the diminution in value of the owner’s remaining land as a result of the taking or the use of the property taken” (Matter of State of New York [KKS Props., LLC], 119 AD3d 1033, 1034 [2014]). “Consequential damages are measured by the difference between the before and after values, less the value of the land and improvements appropriated,” and “[t]he burden of proof is on the claimant to establish indirect damages and to furnish a basis upon which a reasonable estimate of those damages can be made” (Lerner Pavlick Realty v State of New York, 98 AD3d 567, 568 [2012]; see Rose Park Place, Inc. v State of New York, 120 AD3d 8, 10 [2014]). In determining a damages award, “the findings must either be within the range of the expert testimony, or be supported by other evidence and adequately explained by the court” (Matter of State of New York [KKS Props., LLC], 119 AD3d at 1037 [internal quotation marks, brackets and citation omitted]; see Matter of City of New York [Reiss], 55 NY2d 885, 886 [1982]). Although this Court’s authority to review findings of fact made after a nonjury trial in condemnation cases is as broad as that of the trial court, “taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses, where the trial court’s explanation of its award is supported by the evidence, it is entitled to deference and will not be disturbed on appeal” (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1089 [2016] [internal quotation marks, brackets and citations omitted]).
Preliminarily, we note that the PAE travels along existing *1327 roads within Chapin Estate beginning at the intersection of Pine Grove Road and Moscoe Road, runs along Moscoe Road for approximately one mile, and then turns left and proceeds down Toronto Dam Road for approximately 0.8 mile to the public recreational area. It is undisputed that the Moscoe Road portion of the PAE had already been burdened by the UAE pre-condemnation, which provided the public with the right to use that route to access the recreational area, and that both segments of the PAE were also subject to the cross easements by the 480 current and future property owners of Chapin Estate, including their families and guests.
At trial, the parties offered the testimony and reports of their expert appraisers, both of whom utilized a comparable sales methodology to valúate the subject properties and agreed that the highest and best use of the property was for residential subdivision development.[2] The report of claimant’s expert, Daniel Sciannameo, included an “extraordinary assumption”[3] that the pre-taking public access along Moscoe Road was limited by the nature of the road. Sciannameo testified that he considered the environment of Chapin Estate in his pre-condemnation valuation as a “private, gated, exclusive community,” the “exclusive nature [of] which was really created by the fact of being gated.” According to his analysis, the pre-condemnation value of all of the 36 affected properties was $6,060,000. Sciannameo further testified that the properties used for the pre-condemnation valuation would no longer be relevant for a post-condemnation appraisal, as they would no longer be contained within a gated community and the loss of exclusivity would significantly impact the desirability of such properties. Accordingly, Sciannameo utilized relatively recent sales of the same types of properties, not within gated communities but located in the same county. Based on Scian-nameo’s evaluation, the post-condemnation value of the subject properties was $1,655,290, resulting in a $4,404,710 — or nearly 70% — decrease in value.
Respondents’ appraiser, Mark Pomykacz, characterized the properties according to the rights that they either retained or lost post-condemnation. He grouped properties depending on whether they were adjacent to an existing road (Toronto Dam Road properties) or were located adjacent to the existing UAE *1328 (Moscoe Road properties) both pre- and post-condemnation. Pomykacz indicated that another major consideration in his valuation was whether the properties were subject to certain deed restrictions or covenants that could impact their value, such as a homeowners association agreement that gave access to the other 480 property owners, potential property owners, their families and guests to all of the roads within Chapin Estate. Pomykacz concluded that the market area in question was a “modest home market,” but the subject property was “very high end.” For his pre-condemnation valuation, Pomykacz considered 18 comparable sales, comprised of the “best,” or most similar, sales from within Chapin Estate and other high-end subdivisions within the Town. Pomykacz conceded that easements have an impact on the value of a property and. acknowledged that there was a pre-existing UAE, the cross easements by the 480 current and future property owners and the possibility that claimant could, at some point in the future, open its private roads to the public. Pomykacz further identified a negative trend in value over the relevant period of time and determined that an adjustment was necessary for declining prices of approximately four percent per year. His adjusted valuation per acre for the Toronto Dam Road properties was $29,000, whereas the Moscoe Road properties were slightly less valuable in view of the UAE and were valued at $27,250 per acre. Based on his analysis, Pomykacz estimated that the total pre-condemnation value of the subject properties was $6,066,500.
As . for the post-condemnation value, Pomykacz stated that the associated “bundle of rights” had been “slightly diminished” by the taking in that the road adjacent to the subject properties will now be subject to greater traffic and less seclusion, but opined that any lost rights “did not impact the potential to develop and use these sites as basically intended [and that] their core value remains.” Pomykacz indicated that the highest and best use of the property post-condemnation was substantially the same and, therefore, he used the same 18 compar-ables in his post-condemnation valuation. Pomykacz assumed that the public access use post-condemnation would be substantially similar to the use pre-condemnation at least as to Moscoe Road. Pomykacz concluded that the post-taking value for the Toronto Dam Road properties and the Moscoe Road properties was $24,500 and $21,500 per acre, respectively, yielding a total value of $5,769,500 and resulting in a $297,000 decrease in value.
Turning to the particular arguments advanced on appeal, we *1329 reject claimant’s contention that Supreme Court erred in finding that Sciannameo relied on an erroneous “extraordinary assumption,” which undermined his credibility. Sciannameo’s appraisal report adopted the advice of claimant’s counsel that claimant should not be “penalized” for its improvement of the roads between the time that it acquired the property and the date of the taking. Accordingly, in his report, Sciannameo treated the Moscoe Road segment of the PAE pre-condemnation as an “unimproved dirt trail,” which is narrow and “neither maintained nor cleared of snow,” providing “substantially inferior public access than a road that is fully improved to town specifications and that is maintained year-round,” which “directly translates into less public travel on this road and incursion into the Chapin Estate.” Sciannameo’s report further states that “[i]t is clear that after condemnation, the lands adjacent to this road segment are diminished in value because of the expansion of the easement encompassing an approximately 50-foot width on an improved and maintained road that provides superior and increased access year-round.”
At the time of Sciannameo’s appraisal, however, this Court had already determined pre- and post-condemnation public access to be the same (see Matter of Eagle Cr. Land Resources, LLC v Woodstone Lake Dev., LLC, 108 AD3d at 75, 78). Inasmuch as the amount of damages resulting from a condemnation is to be measured and fixed as of the date of the taking (see Wolfe v State of New York, 22 NY2d 292, 295 [1968]; Matter of Central N.Y. Oil & Gas Co., L.L.C. [LaDue], 107 AD3d 1199, 1202 [2013]), Sciannameo’s extraordinary assumption that the pre-taking public access was limited by the nature of Moscoe Road, which was different from the actual condition of the road at the time of the appropriation, was incorrect. Relying on this assumption and the consequent impact of the PAE, Sciannameo’s appraisal report rejected any sales within Chapin Estate in his post-taking comparable sales valuation of the subject properties. Because this assumption affected Scian-nameo’s post-condemnation valuations, Supreme Court properly determined that his credibility was “somewhat compromised,” which determination is entitled to deference (see Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d 787, 792 [2013], appeal dismissed 21 NY3d 938 [2013], lv denied 22 NY3d 858 [2013]; Matter of Adirondack *1330 Hydro Dev. Corp. [Warrensburg Bd. & Paper Corp.], 214 AD2d 813, 814 [1995]).[4]
We are similarly unpersuaded by claimant’s argument that Pomykacz’s report was flawed due to his lack of emphasis on claimant’s loss of exclusivity and the right to control its property. To be sure, “[u]nder the traditional conception of property, the most important of the various rights of an owner is the right of possession which includes the right to exclude others from occupying or using the space” (Seawall Assoc. v City of New York, 74 NY2d 92, 103 [1989], certs denied 493 US 976 [1989]; see Matter of Smith v Town of Mendon, 4 NY3d 1, 11-12 [2004]). Claimant’s appeal to exclusivity relies on an incorrect premise that, pre-condemnation, it actually had the right to exclude others from its roads. In so assuming, claimant ignores the preexisting UAE that ran along the Moscoe Road segment of the PAE and gave the public the right of access to the recreational area. Although the Toronto Dam Road portion of the PAE was not subject to any prior easement, as properly observed by Supreme Court, there was always an easement granting the public access to the recreational area, part of which was relocated to Toronto Dam Road to avoid having it run through the developed lots. In addition, all segments of the PAE were also subject to cross easements allowing access to any of the 480 owners, their families and guests throughout Chapin Estate.
Consistent with these realities, Pomykacz recognized that the PAE had an effect on the subject properties, but concluded that the negative impact was minimal in view of the UAE and the easement rights of the 480 property owners. Pomykacz did determine that the negative impact was slightly greater on the Toronto Dam Road properties that were not already burdened by any pre-condemnation public access. He concluded that the core benefits of the properties remained in that they could still be used as intended — they retained the benefits of inclusion in Chapin Estate as a high-end, luxury, residential community located on a private road, with somewhat less exclusivity but continued access to amenities, security cameras and lighting. Pomykacz further opined that the absence of a physical gate could not decrease the entire value of the affected properties by 70%. By contrast, Sciannameo’s valuations reflect a drastic loss in property values, apparently because his valuations were *1331 based on the incorrect assumption of limited public access pre-condemnation. “Faced with divergent appraisals from the parties’ respective appraisers and further faced with varying comparable sales within each appraisers’ report,” it was within Supreme Court’s “broad discretion to accept or reject expert testimony in determining the value of [the] condemned property” (Matter of CNG Transmission Corp. [Green], 273 AD2d 726, 728 [2000]; cf. Matter of Home Depot U.S.A. Inc. v Assessor of the Town of Queensbury, 129 AD3d 1427, 1430 [2015], lv denied 26 NY3d 915 [2016]).
Claimant further claims that Supreme Court erred by failing to consider the assessed value of the properties at issue set by the Town’s assessor in the year of the taking. While the assessed valuations appear in both appraisers’ reports, claimant attempts to highlight the discrepancies between assessment valuations and Pomykacz’s valuations for the first time on appeal and, as such, the argument is unpreserved for this Court’s review (see Matter of Town of Islip v Sikora, 220 AD2d 434, 437 [1995]). In any event, “[t]he ultimate . . . test for establishing the amount of a condemnation award is always market value,” and, while “[a]ssessed valuation is one of many recognized factors to be considered in connection with market value, ... it is not, by itself, controlling” (Matter of City of New York [57 Columbia, Inc.], 40 NY2d 1057, 1058 [1976] [internal quotation marks and citations omitted]).
As for claimant’s attacks on two specific comparables in Pomykacz’s report, Land Sales 7 and 10, Supreme Court specifically indicated that it accepted Pomykacz’s post-condemnation analysis but for “aforementioned minor exceptions.” For instance, the court “note[d] that each of the subject [properties] had certain unique characteristics” — e.g., lake views or stream access — “which would affect their respective values, separate and distinct from the issue of the easement.” Notwithstanding any alleged errors in adjustments, we are satisfied that Supreme Court did not abuse its discretion in reconciling the competing appraisals (see Matter of Albany County Airport Auth. [Buhrmaster], 265 AD2d 720, 722 [1999], lv denied 94 NY2d 758 [2000]; compare Matter of State of New York [KKS Props., LLC], 119 AD3d at 1037; Matter of Iroquois Gas Transmission Sys., 226 AD2d 808, 809 [1996]).[5] We have considered claimant’s remaining contentions, including the *1332 argument that Pomykacz’s report failed to comply with relevant industry regulations, and find them to be without merit.
Lynch, Rose, Devine and Mulvey, JJ., concur.
Ordered that the order and judgment are affirmed, with costs.

. The PAE is limited in that it prohibits the erection of any structures, storage of any materials, parking or standing of motor vehicles and the placement of any trash or offensive materials along the easement, and also regulates the size of the recreational area parking lot.

. The subject properties are within a forest conservation zoning district that permits low density residential development.

. An extraordinary assumption is an assumption “ ‘which, if found to be false, could alter the appraiser’s opinions or conclusions’ ” (Leslie A. Fields, Anatomy of an Appraisal, 27 No. 1 Prac Real Est Law at 9, 10 [Jan. 2011]).

. To the extent that Sciannameo’s trial testimony in this regard differed from his appraisal report, at a trial in eminent domain proceedings, “all parties [are] limited in their affirmative proof of value to matters set forth in their respective appraisal reports” (22 NYCRR 202.61 [e]).

. We note that the divergent adjustments by the parties’ experts with respect to Land Sales 7 and 10 further highlight the different assumptions that both appraisals made with regard to the public access pre- and post-condemnation.