14 E. 4th St. Unit 509 LLC v Toporek (2022 NY Slip Op 00002)





14 E. 4th St. Unit 509 LLC v Toporek


2022 NY Slip Op 00002


Decided on January 04, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 04, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Manuel Mendez Martin Shulman Bahaati E. Pitt


Index No. 150250/21 Appeal No. 14954 Case No. 2021-02816 

[*1]14 East 4th Street Unit 509 LLC, Plaintiff-Respondent,
v
Michael Toporek, Defendant-Appellant.



Defendant appeals from an order of the Supreme Court, New York County (Lynn R. Kotler, J.) entered on or about July 15, 2021, which, to the extent appealed from as limited by the briefs, granted plaintiff landlord's motion for summary judgment on its first cause of action for breach of contract, dismissed defendant tenant's affirmative defense of failure to mitigate damages, and denied defendant tenant's cross motion for summary judgment dismissing the property damage claim.




Jones Law Firm, P.C., New York (T. Bryce Jones of counsel), for appellant.
Schwartz Sladkus Reich Greenberg Atlas LLP, New York (Matthew A. Ulmann and Maria I. Beltrani of counsel), for respondent.



GISCHE, J.P., 


The Housing Stability and Tenant Protection Act of 2019 (HSTPA) brought sweeping changes to the laws governing residential housing, both regulated and nonregulated (L 2019, ch 36). This dispute concerns a residential nonregulated tenant who vacated an apartment six months before the end of his lease. The issues before us are whether plaintiff-landlord (landlord) complied with changes in the law regarding mitigation of damages (Real Property Law § 227-e) and whether landlord wrongfully retained defendant-tenant's (tenant) security deposit to restore the apartment to its original move-in condition (General Obligations Law § 7-108[1-a][b]).
Landlord is the owner of unit 509, a luxury 10 room residential condominium apartment located at 14 East 4th Street, in the NoHo area of Manhattan, and tenant is the former nonregulated lessee of the apartment. The parties entered into a two year lease commencing October 2017 at a monthly rent of $17,500 for the first year and $18,000 for the second year. In August 2019, the parties entered into a one year renewal lease commencing November 2019 and ending October 2020 at a lower agreed-to rent of $17,000. Tenant provided landlord with a one month security deposit in that amount. Whereas the first lease predated the HSTPA, the renewal lease was executed after its effective date. An addendum to the renewal lease provides that the "[s]ecurity deposit shall not be used by tenant toward any rent," which conforms with the new law.
On May 6, 2020, landlord's principal (Isakov) sent an email to tenant asking about the May rent that had not yet been paid. In his May 9th reply, tenant stated that he was trying to "get the May rent together," and asked if they could talk later that day. Tenant sent Isakov a later email stating that he "would like to move." After the parties spoke on May 9th, Isakov sent tenant an email purporting to summarize what was discussed during their call, including that the apartment would be listed on StreetEasy as available for rent on July 1st and that tenant was responsible for "making the apartment move in ready condition" by having it painted, deep cleaned and restored to its original condition. Tenant would also be responsible for the cost of listing the apartment, including any broker's fee.
On May 14th [*2]tenant notified Isakov that he would be terminating the lease and moving out "sometime between June 1 and June 12" depending on when he could hire a mover and he asked that Isakov apply his security deposit to the unpaid May rent. He told Isakov that he would be getting get in contact with "JC," (landlord's representative), so that JC could inspect the apartment and "take some video" to document the process before he would turn the keys over to her. In response, landlord's attorney sent a letter dated May 18th notifying tenant that he was not allowed to apply the security deposit to his unpaid rent, and his request to terminate the lease prematurely was denied. The letter also notified tenant that his security deposit would be withheld "until such time that you vacate the Unit and the damage to the Unit is assessed." Tenant was advised that even if he moved out, he would remain responsible for the remaining rent payments due under the lease through October 31, 2020, the end of his lease.
There was no further communication between landlord and tenant until June 1st when tenant notified Isakov that he had already moved out, he was surrendering the apartment, and that the keys were left in the kitchen. Landlord inspected the apartment thereafter. On June 3rd landlord's attorney sent a letter to tenant referring to tenant's request that the building's superintendent make repairs to the apartment on his behalf. Although landlord agreed to do so, the letter stated that it would be at tenant's expense.
On June 10th landlord's attorney sent another letter to tenant, stating that it would cost more than the $17,000 security deposit to restore the apartment to its original move-in condition and demanding that tenant pay the difference ($1,442.71). The letter was accompanied by an itemized statement describing each item that needed to be repaired, replaced, or cleaned, the estimated cost of doing so, and a color photograph showing the condition alleged. The costliest repair, in excess of $10,600, was to the floors. Tenant did not remit payment and this action ensued.
Landlord asserted causes of action for breach of lease, recovery of damages caused to the apartment, and attorneys' fees. Landlord sought to recover $102,000 for rent owed by tenant for the six-month period from May 2020, when tenant stopped paying rent, through October 31, 2020, when the lease expired. Landlord also sought to recover $1,442.71 (the amount in excess of the $17,000 security deposit), which it spent to repair damage to the apartment caused by tenant. Tenant answered, asserting a number of defenses, including landlord's failure to mitigate damages. He also claimed that his security deposit was wrongfully retained by landlord.
Landlord moved for summary judgment on its rent claim. In support of its motion, landlord provided Isakov's sworn affidavit, copies of the lease, the renewal lease, the communications between the parties, the attorney's correspondence with tenant, and [*3]a copy of the spreadsheet Isakov prepared documenting the steps she took to re-rent the apartment after tenant moved out. Isakov states that on June 3rd she paid for listings of the apartment on multiple online real estate listing platforms, including StreetEasy, Zillow, Trulia and Naked Apartments and the apartment was immediately listed. She provided a printout from StreetEasy's website confirming the date of the listing at a monthly rent of $20,000 and that she then lowered the rent to $18,000 in October 2020. Isakov states that although each listing is seemingly higher than tenant's rent under the lease, she was offering prospective renters rent concessions and agreeing to pay one month's broker's fee, if any. Isakov explains that with these concessions, the net effective rate of rent was actually $16,667 per month, less than tenant's obligation under the lease. Isakov also states that these online real estate platforms have a policy of posting gross rents, not net effective rent. Isakov's spreadsheet documents the 60 inquiries she received regarding the apartment from June 2020 through February 2021, when it was finally re-rented. It provides the date of each inquiry, the source of each inquiry (i.e. StreetEasy, broker, etc.), and her responses. Isakov states she personally conducted nearly a dozen video walkthroughs and over three dozen live showings of the apartment, even though New York was still in the throes of the pandemic. The apartment was ultimately rerented in February 2021 for a net effective rent of $16,500 per month. Isakov also provided listings of comparable apartments available for rent during that period.
Tenant opposed landlord's motion and cross-moved for summary judgment dismissing landlord's claim to recover the cost of damage to the apartment caused by tenant. The cross motion was supported only by an attorney affirmation; there was no supporting affidavit, nor was there any other evidentiary support for tenant's claim that landlord failed to properly market the apartment or reasonably act to mitigate damages. With respect to his cross motion, tenant raised an issue of law regarding whether landlord forfeited its right to retain any portion of his security deposit because it failed to provide him with written notice of his right to request an inspection before he vacated the apartment. Tenant argues that General Obligations Law § 7-108(1-a)(d) mandates such forfeiture.
Supreme Court granted landlord's motion for summary judgment on its first cause of action for rent, but denied tenant's cross motion for summary judgment. For the reasons set forth below, we affirm. Regarding unpaid rent, landlord made out its prima facie case that rent remained due under the lease and that it took reasonable and customary actions to mitigate damages. With respect to the security deposit law, our reading of the plain statutory language supports a conclusion that noncompliance with the notice provisions of General Obligations Law § 7-108[*4](1-a)(d) does not mandate forfeiture. The forfeiture penalty only applies to General Obligations Law § 7-108(1-a)(e), failure to provide an itemized statement, which statement was indisputably provided here.
Real Property Law § 227-e sets forth a landlord's affirmative duty to mitigate damages where, as here, a tenant vacates the premises before the end of the lease:
"landlord shall, in good faith and according to landlord's resources and abilities, take reasonable and customary actions to rent the premises at fair market value or at the rate agreed to during the term of the tenancy, whichever is lower. If landlord rents the premises at fair market value or at the rate agreed to during the term of the tenancy, the new tenant's lease shall, once in effect, terminate the previous tenant's lease and mitigate damages otherwise recoverable against the previous tenant because of such tenant's vacating the premises. The burden of proof shall be on the party seeking to recover damages. Any provision in a lease that exempts a landlord's duty to mitigate damages under this section shall be void as contrary to public policy."
In enacting Real Property Law § 227-e, the legislature resolved an issue that had plagued the courts, since 1995 when Holy Props. L.P. v Kenneth Cole Prods. (87 NY2d 130 [1995]) was decided by the Court of Appeals, holding that there is no duty to mitigate damages in the context of lease agreements. Although Holy Properties concerned a commercial lease, most courts applied its holding to residential leases as well. In Holy Properties the issue was whether landlord was under an obligation to mitigate damages when tenant abandoned the premises. The Court held that once a tenant abandons the premises before the lease term, "landlord [is] within its rights . . . to do nothing and collect the full rent due under the lease" (Holy Props. at 134). This, as the Court acknowledged, was a departure from the general rule of law that parties to a contract have a duty of "making reasonable exertions to minimize the injury," that is to mitigate damages (id. at 133). Although some courts distinguished between residential and commercial leases, finding that in the context of residential landlord-tenant leases, there is affirmative duty to mitigate damages, they did so by following older precedent (see e.g. 29 Holding Corp. v Diaz, 3 Misc 3d 808, 817 [Sup Ct, Bronx County 2004]; Palumbo v Donalds, 194 Misc 2d 675 [Civil Ct, Kings County 2003]). Real Property Law § 227-e now clearly holds that the duty to mitigate damages applies to all residential leases in New York State. It also clarifies that the doctrine of mitigation of damages is not an affirmative defense to be asserted by a tenant, but rather the burden is on landlord to establish it took reasonable and customary actions to "render the injury as light as possible" (Wilmot v State of New York, 32 NY2d 164, 168 [1973]).
On its motion for summary judgment, landlord established its prima facie [*5]case. It established that $102,000 was due and owing on the lease. It also met its burden of showing that it took reasonable and customary actions to re-rent the apartment and mitigate damages (Cornell v T. V. Development Corp., 17 NY2d 69, 74 [1966]). This burden was satisfied because landlord provided the affidavit of a person with knowledge (Isakov), and other admissible evidence (JMD Holding Corp. v Congress Fin. Corp., 4 NY3d 373, 384-85 [2005]). The affidavit and evidence provided by landlord establish good faith in immediately listing the apartment for rent in accordance with recognized practices in the marketplace. Contrary to tenant's assertion, landlord was not required to show, as part of its prima facie case, that it used a traditional broker. Online real estate platforms were widely used even before the pandemic and they continue to be an effective way that landlords and tenants can find each other (see https://streeteasy.com/blog/virtual-home-tours-nyc/ [last accessed December 10, 2021]).
In opposition, tenant failed to raise an issue of fact that landlord's efforts were not reasonable and customary under the circumstances. He submitted no evidence at all to show that landlord failed to market the apartment at a rent and in a manner commensurate with landlord's abilities and resources, as required by Real Property Law § 227-e. Landlord claims, without opposition, that the advertised rent, which was higher than tenant's rent under the lease, was subject to rent concessions. Isakov's affidavit is detailed on this point. The fact that the apartment was not re-rented until February 2021 is not proof that landlord's efforts to re-rent were unreasonable. While the statute provides that if the apartment is re-rented, the new tenant's lease terminates the previous tenant's lease and mitigates damages otherwise recoverable from that tenant, the statute does require that the unit actually be re-rented in order to fulfill its duty to mitigate. In other words, although landlord did not succeed in re-renting the apartment until February 2021, tenant provides no evidence that landlord failed to act in good faith or did not take necessary steps find a new tenant. Since there are no triable issues of fact to defeat summary judgment, we affirm as to the first cause of action.
As concerns tenant's cross motion for summary judgment dismissing landlord's property damage claim, and his legal argument that landlord wrongfully retained his security deposit and has, therefore, forfeited it as a matter of law, four sections of the General Obligations Law are of particular relevance.
Under General Obligations Law § 7-103(1), it is black letter law that money deposited or advanced by a tenant on a lease agreement "shall continue" to be tenant's money and "shall" be held in trust for the benefit of tenant until the lease is terminated and it is repaid or applied. The deposit is meant to cover the costs of repairing damages to the apartment. Tenant's lease [*6]specifies that the security deposit cannot be applied to arrears. Newly added General Obligations Law § 7-108 (1-a)(b) requires that the entire amount of a nonregulated residential tenant's security deposit "shall" be returned to tenant, except for amounts lawfully retained for, inter alia, "damage caused by tenant beyond normal wear and tear."
General Obligations Law § 7-108 (1-a)(d) also newly added, provides a requirement that landlord provide tenant with written notice of a right to have and be present at an inspection of the premises upon moving out. It provides as follows:
"(d) Within a reasonable time after notification of either party's intention to terminate the tenancy, unless tenant terminates the tenancy with less than two weeks' notice, landlord shall notify tenant in writing of tenant's right to request an inspection before vacating the premises and of tenant's right to be present at the inspection. If tenant requests such an inspection, the inspection shall be made no earlier than two weeks and no later than one week before the end of the tenancy. Landlord shall provide at least forty-eight hours written notice of the date and time of the inspection. After the inspection, landlord shall provide tenant with an itemized statement specifying repairs or cleaning that are proposed to be the basis of any deductions from tenant's deposit. Tenant shall have the opportunity to cure any such condition before the end of the tenancy. Any statement produced pursuant to this paragraph shall only be admissible in proceedings related to the return or amount of the security deposit."
General Obligations Law § 7-108 (1-a)(e), another newly added provision, directs that a landlord either return the security deposit or provide tenant with an itemized description of the repairs for which any amounts are being withheld:
"(e) Within fourteen days after tenant has vacated the premises, landlord shall provide tenant with an itemized statement indicating the basis for the amount of the deposit retained, if any, and shall return any remaining portion of the deposit to tenant. If a landlord fails to provide tenant with the statement and deposit within fourteen days, landlord shall forfeit any right to retain any portion of the deposit" (emphasis added).
Although sections (d) and (e) collectively provide a blueprint that a landlord must follow before a tenant's security deposit can be applied to claimed repairs, by the plain terms of the statute only the obligations in subdivision (e) are subject to a penalty of forfeiture if they are not complied with (see Colon v Martin, 35 NY3d 75, 78 [2020]; Matter of Walsh v 19 New York State Comptroller, 34 NY3d 520, 524 [2019]). We agree with tenant that landlord was timely notified that he would be vacating the apartment, but landlord never provided him with written notice that he had the right to request landlord's inspection of the apartment before he moved out. We need not decide what impact, if any, the parties' [*7]exchanged emails and other communication about tenant's plans to move out and an inspection of the apartment had in the context of their dispute. Nor are we called upon to decide what remedies, other than forfeiture, might flow from noncompliance with the notice provisions. We only hold that the plain reading of the statute makes it clear that the remedy of forfeiture is not mandated by a notice failure of this kind.
The penalty of forfeiture is only mandated when landlord fails to provide an itemized statement of the repairs that it claims are required and justify retention of part or all of the security deposit. Here there is no dispute that landlord provided tenant with such an itemized statement in a timely manner. The parties' further disputes regarding whether the itemized repairs were required, and the cost of rectifying them are issues to be resolved at trial.
Accordingly, the order of the Supreme Court, New York County (Lynn R. Kotler, J.) entered on or about July 15, 2021, which, to the extent appealed from as limited by the briefs, granted plaintiff landlord's motion for summary judgment on its first cause of action for breach of contract, dismissed defendant tenant's affirmative defense of failure to mitigate damages, and denied defendant tenant's cross motion for summary judgment dismissing the property damage claim should be affirmed, without costs.
Order, Supreme Court, New York County (Lynn R. Kotler, J.) entered on or about July 15, 2021, affirmed, without costs.
Opinion by Gische, J.P., All concur.
Gische, J.P., Mendez, Shulman, Pitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 4, 2022